UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY SHORTS,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>PARSONS TRANSPORTATION<br>GROUP, INC.,<br><br>　　　　　　　Defendant. | Civil Action 09-01571  (HHK) |

MEMORANDUM OPINION

Timothy Shorts brings this action against Parsons Transportation Group ("Parsons"), asserting causes of action based upon Parsons' alleged violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, stemming from his employment with and termination by Parsons.  Before the Court is Parsons' motion to dismiss and to compel arbitration [#3] under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.  Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion must be granted.

I. BACKGROUND

Shorts was hired by Parsons in 2004 as a Business Development Manager.  Before beginning his employment with Parsons, he signed the following "offer letter":

> By signing this letter, you acknowledge that your association with Parsons is based on the mutual consent of you and Parsons. . . . [I]n the event that conflicts arise, Parsons has a three-step Employee Dispute Resolution (EDR) Program. The EDR Program includes Freedom of Expression and Appeal, Mediation, and Arbitration as the exclusive means of resolving workplace disputes.  By accepting

employment, you agree to resolve all legal claims against Parsons through this process instead of the court system.

Def.'s Mot. to Dismiss Ex. A, Attach. 2 at 2.  Shorts also signed an "Employee Agreement" with regard to the EDR Program that stated:

> I hereby waive my right to go to court regarding legally protected rights, and understand, agree and acknowledge I will not be able to have a trial by jury for claims relating to those rights.  Instead, by accepting and continuing employment, I agree to utilize the dispute resolution provisions offered by the EDR Program.

Def.'s Mot. to Dismiss Ex. A, Attach. 3 ¶ 3.  In addition to being provided to employees at the outset of their employment, the terms of the EDR Program was also available online.

On January 7, 2009, Shorts underwent reconstructive knee surgery and was granted leave from January 7, 2009, through April 1, 2009, under the FMLA for his surgery, recuperation, and rehabilitation.  When Shorts returned from his leave on April 1, 2009, Ginger Evans, the Aviation Division Manager, placed him on "no fly" status,[1] Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n) Ex. 1 ¶ 4, and told him that "he was not to meet with potential customers for Aviation's active pursuits." *Id.*  Shorts alleges that the restrictions severely limited his ability to perform his job.

Shortly after talking with Evans, on April 24, 2009, Shorts met with Robert Bax, a Senior Vice President,  and a Parsons Ethics Officer, to discuss the restrictions that had been placed on him  and the connection the restrictions may have had to his FMLA leave.  Shorts states that he understood Bax would "look into the matter," but that Bax never "provide[d] guidance or suggest[ed] the use of defendants' Employee Dispute Resolution program" to him.  *Id.* ¶ 6.

---

[1]     It is unclear from the record what exactly is meant by "no fly" status.

2

On April 27, 2009, Evans announced that someone had been hired to assume Shorts' duties on a full-time basis. Shorts met with the Senior Human Resource Representative, Stefani Califano, on May 20, 2009 and expressed concern about his position after the hiring of a new Business Development Lead. He told Califano that "no other full-time permanent positions were being presented to [him] by Ms. Evans," *Id.* ¶ 8, and explained the restrictions that had been placed on him. Shorts also stated that he thought that he would be fired if Evans became aware of his conversation with Bax. Shorts alleges that Califano provided no guidance and at no point suggested the use of Parsons' Employee Dispute Resolution program.

On June 10, 2009, Califano notified Shorts that he was being terminated. Shorts again alleges that Califano failed to suggest the use of Parsons' EDR program, even though he told her that he had not received any guidance on how to dispute the actions taken by Evans. On June 23, 2009, Shorts received a letter terminating his employment with Parsons effective July 16, 2009.

Three days later, Shorts' attorney sent a letter to James Shappell, President of Parsons, alleging violations of the FMLA and requesting to speak with someone prior to Shorts' termination. Shorts' attorney sent a follow-up letter on July 14, 2009 after not receiving a response. On July 16, 2009, Parsons replied through emails from Richard Reddy, Vice President and Associate General Counsel, and Michelle Johnson, Employee Relations Manager. The emails from Reddy and Johnson referred Shorts' attorney to Parsons' EDR materials. In relevant part, Johnson's email read, "I am forwarding the Parsons' EDR materials and information and review. . . . [As noted by Richard Reddy in his previous email], it is a condition of employment that employees utilize the company's EDR program to resolve employment-related disputes." Pl.'s Opp'n Ex. 5 at 1.

## II.  ANALYSIS

A.  **Legal Standard**

When a party moves to dismiss and compel arbitration, he effectively raises the issue of whether there was a meeting of the minds on the agreement to arbitrate, and the standards for resolving a summary judgment motion pursuant to Federal Rule of Civil Procedure 56 are therefore applied.  *Booker v. Robert Half Int'l, Inc.*, 315 F. Supp. 2d 94, 99 (D.D.C. 2004) (citation omitted); *see also Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 67 (D.D.C. 2003) ("[T]he proper approach to employ in reviewing the defendant's motion to dismiss and compel arbitration is to apply the same standard of review that governs Rule 56 motions."). Therefore, it is appropriate to grant a party's motion to compel arbitration when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

B.  **The FAA**

The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The question of whether a particular dispute is arbitrable is "undeniably an issue for judicial determination."  *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).  The basis for judicial authority to make this determination lies in the fact that arbitration agreements are separable from the agreements in which they are incorporated.  *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)

(describing *Prima Paint* as so holding). Thus, it is well settled that a court may dismiss an action altogether where "all issues raised in the complaint must be submitted to arbitration." *Emeronye v. CACI Int'l, Inc.*, 141 F. Supp. 2d 82, 88 (D.D.C. 2001).

A strong policy favoring alternative means of dispute resolution through arbitration supports a presumption of arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). However, "the FAA does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989) (citation omitted). Indeed, the overriding purpose of the FAA is not judicial economy or the expeditious resolution of claims, but the enforcement of agreements into which parties have entered. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20 (1985). As articulated by the Supreme Court, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs.*, 475 U.S. at 648 (citations omitted).

1. **Waiver of the right to arbitrate.**

The right to arbitrate is a contractual right and, like any other contractual right, it can be waived. *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987) (citing *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966)). The central question in determining if waiver has occurred is whether "under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right." *Nat'l Foundation*, 821 F.2d at 774 (citing *Cornell & Co.*, 360 P.2d at 513). A party is generally deemed to have waived its right to arbitrate where it makes use of the judicial process before attempting to exercise its right to arbitrate. *See Khan v. Parsons Global Servs., Ltd.*, 521 F.3d 421, 424-25, 428

(D.C. Cir. 2008) (holding defendant waived arbitration right by moving for summary judgment); *Nat'l Found.*, 821 F.2d at 775 (holding defendant waived arbitration right because it filed answer to complaint asserting fifteen affirmative defenses, engaged in extensive discovery, and moved for summary judgment before requesting arbitration). Thus, where a party "has made a decision to take advantage of the judicial system . . . [it] should not be able thereafter to seek compelled arbitration." *Khan*, 521 F.3d. at 427.

    2.    **Parsons did not waive its right to arbitration.**

Shorts concedes that the parties entered into a valid and enforceable arbitration agreement and that the arbitration agreement encompasses the claims raised in the complaint. Shorts nevertheless argues that Parsons waived its right to arbitrate by acting "inconsistently" with the employee dispute resolution agreement by (1) "repeatedly rebuffing" his efforts to resolve his complaint in-house, (2) "repeatedly ignoring" his attorney's attempt to "initiate a dialogue concerning [Shorts'] removal," and (3) terminating him prior to taking any steps to resolve his complaint. Pl.'s Opp'n at 6-7.

Shorts' argument that Parsons waived its right to arbitration cannot be sustained for the simple reason that Shorts does not identify any action Parsons took under the arbitration agreement that required Parsons to do anything more that it did. His assertions and characterizations regarding the circumstances, none supported by reference to authority or the specific terms of the arbitrations agreement, are insufficient. Indeed, Shorts does not even attempt to link any action on Parsons' part that was not in accordance with the terms of the dispute resolution agreement.

The EDR agreement states that "[t]hree [s]teps are available to employees for resolving work-related disputes." Def.'s Mot. to Dismiss Ex. A, Attach. 1 at 3. The first step is entitled "Freedom of Expression & Appeal." In this step, employees can raise concerns with a supervisor or a Human Resources representative. The agreement expressly states that "If these discussions do not resolve the problem, Freedom of Expression & Appeal offers three formal procedural actions." *Id.* at 9. First, the employee can submit a Freedom of Expression & Appeal Form describing her position and the relief sought. Once the form is submitted, "[t]he employee's supervisor, in conjunction with a Human Resources representative, will evaluate the situation and provide the employee with a written response to the original filing within ten (10) working days." *Id.* If the employee is unsatisfied with the response, he or she may then appeal to the Office Manager in step two, and to the HR Director and President of the Business Unit in step three. Both steps two and three, like step one, require a written response to the employee's form within ten days.

The obligation to provide a written response, and for Parsons thereafter to take subsequent actions to address a work-related dispute, comes about only when a Freedom of Expression & Appeals Form is submitted. The agreement imposes no such obligation on Parsons if an employee simply raises a dispute orally with a supervisor, as Shorts did.

Despite the significance of the Freedom of Expression & Appeals Form, Shorts' opposition memorandum reduces it to a single footnote. Shorts states that "[he] did not complete the 'Freedom of Expression Appeal Form,' but neither was he advised at any of these

meetings . . . that completing the form was a mandatory prerequisite for resolving a dispute."[2] Pl.'s Opp'n at 6 n.1. Shorts' argument is unpersuasive. First, the EDR Program procedures impose no obligation on Parsons to advise employees of its contents. The oral communication portion of the Freedom of Expression and Appeal step contemplates an informal discussion between the employee and management, but nowhere does it require that management furnish the employee with a copy of the EDR Program or affirmatively recommend further steps by the employee. *See* Def.'s Mot. to Dismiss Ex. A, Attach. 1 at 9. Second, as a general rule, "one who signs a contract has a duty to read it, and is bound by its provisions if he had the opportunity to read and understand it." *Stanwood v. Welch*, 922 F. Supp. 635, 640 (D.D.C. 1995) (citing *McNulty v. Med. Serv. of the Dist. of Columbia*, 189 A.2d 125, 128 (D.C. 1963)). Moreover, where an employee has signed an employment agreement and the agreement is made available by the employer through resources such as the company intranet, it is the employee's responsibility to familiarize herself with the relevant policies. *See Martin v. Citibank, Inc.*, 567 F. Supp. 2d 36, 42 (D.D.C. 2008). Here, Shorts signed both the employment offer and the employee agreement with respect to the EDR Program. Employees were provided with the Program procedures at the outset of their employment; they were also available to employees online. Shorts, therefore, bore the responsibility to be familiar with the policies and Parsons was not obligated, under either the EDR policies or general contract principles, to "advise" him of the EDR Program requirements.

---

[2] Shorts' counsel does not characterizes the Freedom of Expression & Appeals Form correctly. The form is not "a mandatory prerequisite for resolving a dispute," Pl.'s Opp'n at 6 n.1, under the EDR procedures. Rather, it is the only action within the Freedom of Expression & Appeals step that obliges Parsons to formally respond to an employee's grievance.

Furthermore, under the EDR Program procedures, Shorts was entitled to bypass the Freedom of Expression & Appeals step and proceed to the second step, Mediation.[3] With respect to Mediation, "[a]ny party to an employment dispute *may* initiate mediation by filing Mediation/Arbitration Request Form with the Parsons Dispute Resolution Specialist." Def.'s Mot. to Dismiss Ex. A, Attach. 1 at 10 (emphasis added). Insofar as Shorts seeks to impose upon Parsons a duty to initiate proceedings to resolve an employee's grievance, Shorts would have the Court read the provision to say "the employer *must* initiate mediation." Such a reading is unwarranted and would alter the plain language of the agreement. Thus, Shorts had every right to initiate mediation by submitting a Mediation/Arbitration Request Form, but he did not do so. And, under the plain terms of the EDR program, Parsons was not obligated to initiate mediation.

In sum, Parsons was under no obligation to: (1) respond formally to Shorts' consultations with management and Human Resources, (2) ensure that Shorts was aware of the EDR policies and procedures, or (3) initiate mediation proceedings. Therefore, there is no merit to Shorts' argument that Parsons acted "inconsistently with the right to arbitrate." *Nat'l Foundation*, 821 F.2d at 774.

Shorts also alleges that Parsons breached the dispute resolution agreement when it "repeatedly ignore[ed]" Shorts' attorney's attempt to "initiate a dialogue concerning [Shorts'] removal." Pl.'s Opp'n at 6. The problem for Shorts is that the agreement did not require Parsons

---

[3] The EDR Program procedures provide that the Freedom of Expression & Appeals step is encouraged, but not required. Def.'s Mot. to Dismiss Ex. A, Attach. 1 at 3. Not only that, but "[i]f the employee is terminated, the employee unilaterally has the option to bypass the Freedom of Expression & Appeal Step and proceed directly to mediation and then arbitration for issues related to his or her termination" *Id.* at 4. In other words, once Shorts was terminated he had two options: file a Freedom of Expression & Appeals Form or bypass that step and initiate mediation. Shorts did neither.

to "dialogue" with his attorney. Under the terms of the EDR Program, Shorts and his attorney could have either submitted the Freedom of Expression & Appeals Form or unilaterally initiated mediation. Indeed, Parsons even provided Shorts' attorney with the EDR Program in its response email on July 16, 2009. Nothing more was required of Parsons.

Finally, Shorts contends that Parsons violated the dispute resolution agreement when it refused to take any steps to resolve his complaint before his termination. To reiterate, Shorts fails to show that Parsons did anything, or failed to do anything, that was not in accordance with the dispute resolution agreement. In the absence of such a showing there is no basis for arguing that Parsons "did not take steps"—at least none of any legal consequence—to resolve his complaint. There is simply nothing in the EDR Program that requires Parsons to first settle grievances with employees before terminating their employment. Indeed, the EDR Program clearly contemplates that an employee may be terminated prior to the resolution of a dispute. Section I(B) states that "[i]f an employee is terminated, the employee unilaterally has the option to bypass the Freedom of Expression & Appeal Step and proceed directly to mediation and then arbitration for issues related to his or her termination." Def.'s Mot. to Dismiss Ex. A, Attach. 1 at 4. Thus, termination may constitute a dispute to be resolved through the EDR process, but it is not a violation of the process itself.[1] Parsons' termination of Shorts before attempting to resolve his complaint, therefore, did not breach the dispute resolution agreement and was not inconsistent with Parsons' right to arbitrate Shorts' grievance.

---

[1] Shorts' contention that Parsons terminated him in retaliation for his making claims based on the FMLA is not relevant to the issue of whether Parsons waived its right to arbitration. Whether Parsons terminated Shorts in retaliation for invoking his rights under the FMLA is a proper subject for arbitration.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Parsons' motion to dismiss and to compel arbitration [#3] should be granted. An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge
